**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **THEODORE N. ARITA** | **CIVIL ACTION** |
| **versus** | **NO. 11-636** |
| **BURL CAIN (WARDEN)** | **SECTION: "A" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Theodore N. Arita, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On April 24, 2003, he was convicted under Louisiana law of attempted armed robbery.[1] On July 24, 2003, he pleaded guilty to being a multiple offender and was sentenced as such to a term of thirty years imprisonment without benefit of probation, parole, or

---

[1] State Rec., Vol. IV of VII, transcript of April 24, 2003, p. 199; State Rec., Vol. I of VII, minute entry dated April 24, 2003; State Rec., Vol. I of VII, jury verdict form.

suspension of sentence.[2]  On March 1, 2005, the Louisiana Fifth Circuit Court of Appeal affirmed

that conviction and sentence.[3]  The Louisiana Supreme Court then denied petitioner's related writ

application on November 29, 2005.[4]

On November 29, 2007, petitioner, through counsel, filed an application for post-

conviction relief in the state district court.[5]  That application was denied on February 12, 2008.[6]  He

was then likewise denied post-conviction relief by the Louisiana Fifth Circuit Court of Appeal[7] and

the Louisiana Supreme Court.[8]

On March 15, 2011, petitioner filed the instant federal application for *habeas corpus*

relief.[9]  In support of his application, he asserts the following claims:

1.      The prosecutor engaged in misconduct;

---

[2]  State Rec., Vol. I of VII, minute entry dated July 24, 2003; State Rec., Vol. I of VII, guilty plea form.

[3]  State v. Arita, 900 So.2d 37 (La. App. 5th Cir. 2005) (No. 04-KA-39); State Rec., Vol. I of VII.

[4]  State v. Arita, 916 So.2d 165 (La. 2005) (No. 2005-K-0843); State Rec., Vol. VII of VII.

[5]  State Rec., Vol. I of VII.

[6]  State Rec., Vol. II of VII, Order dated February 12, 2008.

[7]  Arita v. Cain, No. 09-KH-614 (La. App. 5th Cir. Dec. 10, 2009); State Rec., Vol. II of VII.

[8]  Arita v. Cain, 49 So.3d 885 (La. 2010) (No. 2010-KP-0075); State Rec., Vol. VII of VII.

[9]  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner placed his application in the prison mailing system on March 15, 2011.  Rec. Doc. 1, p. 15.

2.      Petitioner was denied the right to confront the technician who

lifted fingerprints from the crime scene;

3.      Petitioner received ineffective assistance of counsel; and

4.      The trial court erred in denying petitioner's motion to strike

a juror for cause.[10]

<u>Timeliness</u>

The state contends that petitioner's federal application is untimely.[11]  The state is

correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established

a one-year statute of limitations for the filing of federal *habeas corpus* applications.  The method

for calculating a petitioner's one-year period is set forth in 28 U.S.C. § 2244(d), which provides:

> (1) A 1-year period of limitation shall apply to an application
> for a writ of habeas corpus by a person in custody pursuant to the
> judgment of a State court.  The limitation period shall run from the
> latest of –
>
> > (A) the date on which the judgment became final by
> > the conclusion of direct review or the expiration of the
> > time for seeking such review;
> > (B) the date on which the impediment to filing an
> > application created by State action in violation of the
> > Constitution or laws of the United States is removed, if the
> > applicant was prevented from filing by such State action;

---

[10]  The Court notes that, after this federal application was filed, petitioner returned to the state district court to file another application for post-conviction relief.  State Rec., Vol. II of VII.  That application was denied as untimely on April 26, 2011.  State Rec., Vol. II of VII, Order dated April 26, 2011.

[11]  Rec. Doc. 7.

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Clearly, Subsections B and D are inapplicable here, in that petitioner does not claim either the existence of a state-created impediment to filing or a newly-discovered factual predicate for his claims.

Petitioner does, however, appear to invoke Subsection C by arguing that one of his claims is based on Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009).[12]  However, because Melendez-Diaz is not retroactively applicable to cases on collateral review, § 2244(d)(1)(C) is inapplicable.  See, e.g., Walker v. Johnson, No. 2:10CV548, 2011 WL 2119260, at *4 (E.D. Va. Apr. 19, 2011), adopted, 2011 WL 2119141 (E.D. Va. May 27, 2011).

Accordingly, petitioner is left with only Subsection A.  As noted, under that provision, a petitioner must bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment became final upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).  In the instant case, the Louisiana Supreme Court denied petitioner's writ application on direct review on November 29, 2005.  Therefore, his criminal judgment became "final" no later than February 27, 2006, when his period expired for seeking a writ of certiorari from the United States Supreme Court.  See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Chester v. Cain, Civ. Action No. 01-1958, 2001 WL

---

[12]  See Rec. Doc. 1, pp. 14 and 25.

1231660, at *3-4 (E.D. La. Oct. 15, 2001); see also U.S. Sup. Ct. R. 13(1). Accordingly, his period for seeking federal *habeas corpus* relief commenced on that date and expired on February 27, 2007, unless that deadline was extended through tolling.

The Court first considers statutory tolling. The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). However, petitioner had no such state applications pending at any time during the one-year limitations period.[13] Therefore, he clearly is not entitled to statutory tolling.

The AEDPA's limitations period is also subject to equitable tolling. Holland v. Florida, 130 S.Ct. 2549, 2560 (2010). That said, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (internal quotation marks omitted); see also Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

---

[13]   The Court notes that petitioner filed post-conviction applications on November 29, 2007, and most recently in 2011. However, such applications filed after the expiration of the federal statute of limitations has no bearing on the timeliness of a *habeas* petitioner's federal application. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000).

Petitioner argues that such an "extraordinary circumstance" exists here due to his lawyer's failings.  Petitioner alleges:

> Petitioner's family specifically hired Attorney James Williams, who signed a contractual agreement to file any, and all appeal proceedings through State, and Federal Courts.  Including any probation, parole hearings in the future.  This was also Attorney throughout trial, and knew all the details of petitioner's case.  Failed to provide petitioner with any relevant paper work surrounding his case, even after numerous request.  During James Williams employment, and appeal process, he and assistant "Mike" continuously deceived petitioner, and his family into beleiving that everything was okay, and Petitioner was in no danger of loseing Any time limitations.  Continuously urgeing us to be calm, and patient with the process, and assured us that he had everything under control.[14]

To determine whether equitable tolling is warranted, a federal court must first determine whether counsel's conduct constituted mere negligence or, instead, deception or other egregious misconduct.

It has long been held that an attorney's mere negligence does not warrant equitable tolling.  For example, in <u>Cousin v. Lensing</u>, 310 F.3d 843 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals stated:

> Many courts have considered the question whether attorney error constitutes "rare and exceptional circumstances" and have held that it does not. [FN4]  Additional support for the proposition that

---

[14]  Rec. Doc. 1, pp. 13-14; <u>see also</u> Rec. Doc. 1, pp. 26-27.  Petitioner also complains about the attorneys he had retained both before and after Williams.  However, the prior attorneys were fired no later than October 25, 2006, when Williams was retained.  Rec. Doc. 1, pp. 26-29.  Because that was long before the federal limitations period expired, their alleged misconduct in no way prevented petitioner from filing a timely federal application.  The attorneys after Williams were hired no earlier than October 12, 2007.  Because the federal limitations period had already expired at the time they became involved in the case, their alleged misconduct is obviously irrelevant to the issue of equitable tolling.  <u>Triplett v. King</u>, 250 Fed. App'x 107, 108-09 (5th Cir. 2007).

attorney error does not trigger equitable tolling is the longstanding rule that prisoners are not entitled to counsel during habeas proceedings and thus cannot state a claim for ineffective assistance during those proceedings.  See Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

> [FN4]  See United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000) (holding that the death of the attorney's father two weeks before filing deadline did not constitute extraordinary circumstance for equitable tolling purposes); Kreutzer v. Bowersox, 231 F.3d 460, 463 (8th Cir. 2000) (holding that attorney's confusion over applicability of § 2244(d)(1) did not justify equitable tolling), cert. denied, 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001); Harris v. Hutchinson, 209 F.3d 325, 330-31 (4th Cir. 2000) (holding that attorney's mistaken interpretation of § 2244(d) limitation provision did not justify equitable tolling); Taliani v. Chrans, 189 F.3d 597, 598 (7th Cir. 1999) (holding that attorney's miscalculation of limitations period was not valid basis for equitable tolling); Sandvik v. United States, 177 F.3d 1269, 1272 (11th Cir. 1999) (holding that untimeliness resulting from attorney's use of ordinary mail did not justify equitable tolling).

Cousin, 310 F.3d at 848 & n. 4.  The Fifth Circuit then held:  "[W]e join the other circuits that have considered this issue and hold that mere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified."  Id. at 849.  In a subsequent case, the Fifth Circuit noted:  "If there was ever any doubt that an attorney's error or neglect does not warrant equitable tolling, our recent decision in Cousin ... erased it ...."  United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002).  The Court concisely stated:  "Ineffective assistance of counsel is irrelevant to the tolling decision."  Id. (emphasis added).   While error or neglect may warrant

professional discipline of the attorney, it simply does not justify equitable tolling of the AEDPA's statute of limitations.  Id. at 800.

As recently as 2007, the United States Supreme Court expressly shared that view. In Lawrence v. Florida, 549 U.S. 327 (2007), a case in which the petitioner had been sentenced to death, the Supreme Court rejected a bid for equitable tolling, holding:

> Lawrence argues that his counsel's mistake in miscalculating the limitations period entitles him to equitable tolling.  If credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline.   Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.

Id. at 336-37.

Therefore, to the extent that petitioner is claiming mere attorney error or neglect, equitable tolling is not warranted.

On the other hand, the United States Supreme Court recently explained that, while a "garden variety claim of misconduct" does not warrant equitable tolling, such tolling may be warranted by "far more serious instances of attorney misconduct."  Holland v. Florida, 130 S.Ct. 2549, 2564 (2010).  However, it must be noted that the facts in Holland evidenced truly egregious misconduct.  For example, there was an almost complete breakdown in communication between Holland and his counsel, with Holland going as far as repeatedly contacting the state courts asking that his attorney be removed from the case and even filing a complaint with the bar association. Moreover, the attorney failed to inform Holland when the state court denied relief and failed to understand the applicable law after it was brought to his attention by Holland himself.  That said,

even in light of those circumstances, the United States Supreme Court was unwilling to decide whether equitable tolling was in fact warranted under the facts of that case. Instead, the matter was remanded for the lower courts to make that determination.

Nevertheless, even if the facts in <u>Holland</u> would warrant equitable tolling, the same would not be true here. While petitioner's attorney was retained for services he ultimately failed to provide and appears to have neglected the case, those actions are more indicative of negligence than the egregious misconduct which would warrant equitable tolling.

Lastly, this Court must address petitioner's argument that equitable tolling should be granted because he was in fact deceived by Williams. Clearly, equitable tolling may be warranted where an attorney intentionally deceives his client and the client reasonably relies to his detriment on the false representation. For example, such tolling may be warranted where counsel falsely tells a petitioner that an application has in fact been filed. <u>See, e.g.</u>, <u>United States v. Wynn</u>, 292 F.3d 226 (5th Cir. 2002) (involving a § 2255 application). In the instant case, however, petitioner does not even allege, much less prove, that Williams ever told petitioner that a post-conviction application had been filed. On the contrary, petitioner's evidence includes several letters he wrote to Williams asking how the case would proceed and whether any applications had been filed on petitioner's behalf.[15] As late as March 29, 2007, after the federal limitations had already expired, it was clear

---

[15] Rec. Doc. 1, pp. 78-82.

that petitioner still had not been falsely told that an application had been filed, because he wrote to Williams asking:  "Has anything been filed yet?  If so, what was it, and WHEN?"[16]

The closest the instant case even arguably comes to deceit is the fact that Williams signed a contract for legal services in which he agreed to "prepare, file, and argue any post-conviction relief, habeas corpus, or parole, probation or pardon proceedings, thru Federal Court."[17]  However, even if that representation were to be interpreted as deceitful (in that it does not state that such applications would in fact be filed *only* if viable claims existed), deceit alone does not warrant equitable tolling.  Rather, again, an attorney's intentional deceit warrants equitable tolling "*only if the petitioner shows that he reasonably relied on his attorney's deceptive misrepresentations*."  Riggs, 314 F.3d at 799 (emphasis added).  In the instant case, petitioner's reliance was hardly reasonable.  At the time Williams was first hired, petitioner was clearly aware that he was subject

---

[16]  Rec. Doc. 1, p. 82.  In a subsequent letter to petitioner's mother, Williams explained that he had no intention of filing any application for post-conviction relief because petitioner had no viable claim:

> After reviewing the law and jurisprudence it is my opinion that there are no legitimate issues that I can present which would entitle [petitioner] to Post Conviction Relief.
> The only issue that he has, in my opinion, was the failure of the state to call the crime scene technician that lifted the finger prints from the car, which matched [petitioner's].  Since this issue was considered by the 5th Circuit Court of Appeal, the law prohibits us from litigating this issue in a Post Conviction Relief Application.

Rec. Doc. 1, p. 87.

[17]  Rec. Doc. 1, p. 77.

to a one-year limitations period.[18]  Early on, he was frustrated by the lack of communication from Williams and the complete absence of any reassurances from Williams himself that he was attending to petitioner's case.[19]  In light of those facts, it was unreasonable for petitioner to simply hope that his counsel would file something in time; rather, at a minimum, he should have filed a *pro se* petition in this Court before the deadline to ensure that his rights were protected.

Based on the foregoing, the Court finds that petitioner is entitled to neither statutory tolling nor equitable tolling.  Therefore, his federal application for *habeas corpus* relief had to be filed on or before February 27, 2007, in order to be timely.  Because his federal application was not filed until March 15, 2011, it is therefore untimely.

That said, in the event that the United States District Judge finds that the federal application was timely filed, petitioner's claims will be addressed out of an abundance of caution.

<u>Standards of Review</u>

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).

---

[18]  Rec. Doc. 1, p. 78.

[19]  Rec. Doc. 1, pp. 79-81.

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and

footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways.  First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).   The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is objectively

unreasonable, and we stressed in Williams that an unreasonable application is different from an

incorrect one."   Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application

of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's
> contrary conclusion was unreasonable.
>       If this standard is difficult to meet, that is because it was
> meant to be.  As amended by AEDPA, § 2254(d) stops short of
> imposing a complete bar on federal court relitigation of claims
> already rejected in state proceedings.  It preserves authority to issue

the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

<u>Facts</u>

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

Meineke Davis testified that she was employed as a manager at a McDonald's Restaurant at 301 Veterans Highway in Metairie. She testified that, on August 27, 2001, she worked the night shift at the restaurant and performed closing duties with employees Candie Robertson and Benjamin Harrison.

Davis testified that she and the other two employees got into her car in the McDonald's parking lot.  Davis prepared to drive to the parking lot of a nearby Winn-Dixie Supermarket to wait for Robertson's mother to arrive.  Davis said defendant approached the passenger side of her car with a gun in his hand.  He ordered the three to go back into the restaurant and said no one would get hurt if everyone did what they had to do.  Davis, Robertson, and Harrison got out of the car and walked toward the restaurant with defendant. Defendant told Davis to return to her car to turn off the lights.  Davis complied, and then they all entered the building.

Davis testified that defendant ordered her to open the safe in the manager's office.  Harrison turned on the lights to allow her to see.  Davis had trouble opening the safe.  Defendant banged on the safe and said, "'Open up the m——— -f safe, b——, before I shoot.'" He continued to shout and curse at Davis, while clicking the gun.

Davis testified that in entering the restaurant they had set off the security alarm.  The telephone began to ring, and Davis assumed

the alarm company was calling.  Defendant said, "'I know that's the alarm people calling.  Hurry up.  Hurry up.  Hurry up.'"  Defendant continued to point the gun at her back and to click it.

At one point defendant asked Harrison whether the restaurant's back door was unlocked.  Harrison replied that it was not.  Defendant then asked if there was another door unlocked.  The three employees told him the front door was still unlocked.

Defendant said to Davis, "'B——, you ain't opened the safe yet?  Hurry up and open the safe.'"  After several attempts, Davis was able to open the safe.  She turned to tell defendant, but found he was not there.  She saw him walk out through the front of the restaurant.  Davis testified that defendant did not take anything from her or the other employees.

Davis said she exited the restaurant with Robertson and Harrison and found Robertson's mother outside waiting.  Robertson's mother used her cellular telephone to call police.  Davis testified that when officers arrived at the scene, she informed them of the incident and gave them a description of the perpetrator.  She identified defendant in a photographic lineup on September 7, 2001.  She also identified defendant at trial as the man who attempted to rob her.

Harrison, a high school senior, testified that he and the other employees closed the restaurant at about 1:00 a.m.  He sat in the front passenger seat of Davis' car, eating a McDonald's parfait and spitting the granola out of the window.  At one point Harrison turned to the open window and saw defendant standing next to the car pointing a gun at his face.  Harrison testified that, as Davis tried to open the restaurant's safe, defendant threatened to shoot her in the back of her head.

Harrison testified that it took officers about an hour to get to the restaurant after defendant left the scene.  He spoke to sheriff's deputies when they arrived.  He got a good look at the perpetrator's face and was able to give a description to officers.  He identified defendant in a photographic lineup on September 6, 2001.  He identified defendant at trial as the perpetrator.

Robertson testified that she was sitting in the back seat of Davis' car when defendant approached with a gun.  She was terrified and cried during the incident.  She testified that she spoke with officers when they arrived at the scene, and gave them a description of the perpetrator.  Robertson testified that she identified defendant in a photographic lineup on September 6, 2001 and identified defendant in court.

Detective Gerald Trahan of the Jefferson Parish Sheriff's Office testified that he was on patrol when he was called to report to the scene of the attempted robbery. Eight to ten other deputies also reported to the scene. Several of those deputies interviewed the victims. Trahan testified that he inspected the inside of the restaurant and found a .9 mm round on the floor near the drive-up window.

Trahan accompanied Sergeant Don Carson, a crime scene technician, as he processed the scene. He watched as Carson dusted the driver's side and passenger doors for fingerprints. Trahan testified those were the areas the witnesses saw the perpetrator touch. Carson showed Trahan that he had found a good print on the passenger door. Trahan interviewed Davis, Harrison, and Robertson, and included their descriptions in his incident report.

Detective Jeffery Rodrigue of the Robbery Squad testified that he conducted a follow-up investigation of the attempted robbery and developed defendant as a suspect. He compiled a photographic lineup and included a picture of defendant. He showed the lineup to Davis, Harrison, and Robertson individually. Each witness identified defendant as the perpetrator.

Lieutenant Patricia Adams testified that she works in the Latent Fingerprints Division of the sheriff's office. She lifts latent fingerprints at crime scenes and analyzes fingerprints. The court accepted her as an expert in lifting, analyzing, and identifying fingerprints. Adams testified that she compared the latent fingerprint from the scene with a set of defendant's fingerprints she had taken herself. She concluded that the prints on both exhibits were made by the same person. Adams testified that she had not lifted the latent print.[20]

<u>Prosecutorial Misconduct</u>

Petitioner first claims that the prosecutor engaged in misconduct by referring to petitioner as an armed robber at trial and by eliciting testimony which referred to another parish. Petitioner argues that this was done in an effort to lead the jury to infer that he had been involved

---

[20] <u>Arita</u>, 900 So.2d at 39-41; State Rec., Vol. I of VII.

in other illegal acts.  When this claim was first asserted in the state post-conviction proceedings, the

state district court denied the claim, holding:

> The petitioner contends that the prosecutor, during opening statement and closing argument, testified to petitioner's guilt.  He bases his argument on the assistant district attorney's statement, "the defendant in this case, Theodore Arita, is an armed robber."  He also complains that a police officer testified that he worked in conjunction with the New Orleans Police Department.  In addition, he contends that the prosecutor's remarks during closing argument improperly stated the conclusion that the defendant was an armed robber and that his fingerprints were retrieved because he was guilty.
>
> In response to these claims, the state raises procedural bars which the court must address at the outset under the mandate of LSA-C.Cr.P. art. 927.  Mandatory post-conviction rules provide that unless required in the interest of justice, a claim for relief which was fully litigated in an appeal shall not be considered.  LSA-C.Cr.P. art. 930.4(A).  If the application raises claims known to the petitioner but inexcusably not raised in the proceedings leading to conviction, the court may deny relief.  LSA-C.Cr.P. art. 930.4(B).  If the application brings a claim which the petitioner raised in the trial court but inexcusably failed to pursue on appeal, the court may deny the claim. LSA-C.Cr.P. art. 930.4(C).  Additionally, claims that could have been but were not raised at the trial level may be denied by the post-conviction court.  See State v. Gaines, 701 So.2d 688 (La. App. 4 Cir. 1997), which holds that a petitioner is procedurally barred from raising a claim on post-conviction relief if he could have done so on appeal or in prior applications.
>
> As can be seen by reviewing the statutes referenced above, the rules governing post-conviction applications are very strict.  It is of fundamental importance to remember that post-conviction relief is not designed to take the place of an appeal.  State v. Counterman, 611 So.2d 661. 665 (La. 9/10/85).
>
> The court's task is to determine if the procedural bars apply to the issues raised in this petition.  In connection with the allegedly improper references to guilt during opening statement, as well as the police officer's alleged reference to another crime, trial counsel made a timely objection.  However, these issues were not raised on direct appeal.  For this reason, the Court finds these claims are barred by application of article 930.4.

> In connection with the state's comments during closing
> argument, there was no contemporaneous objection by the defense.
> These claims are also barred by application of article 930.4(B).[21]

Petitioner then sought review by the Louisiana Fifth Circuit Court of Appeal. Although noting that

petitioner's writ application was untimely filed, the Court of Appeal nevertheless reviewed the

application and held that this claim was procedurally barred for the reasons noted by the district

court.[22] The Louisiana Supreme Court thereafter likewise denied relief without assigning additional

reasons.[23]

Regarding *habeas* review of claims rejected by the state courts on procedural

grounds, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person
> in its custody may not be reviewed by a federal court if the last state
> court to consider that claim expressly relied on a state ground for
> denial of relief that is both independent of the merits of the federal
> claim and an adequate basis for the court's decision. To satisfy the
> "independent" and "adequate" requirements, the dismissal must
> "clearly and expressly" indicate that it rests on state grounds which
> bar relief, and the bar must be strictly or regularly followed by state
> courts, and applied to the majority of similar claims. This rule
> applies to state court judgments on both substantive and procedural
> grounds. Where there has been one reasoned state judgment rejecting
> a federal claim, later unexplained orders upholding that judgment or
> rejecting the same claim are presumed to rest upon the same ground.

---

[21]  State Rec., Vol. II of VII, Order dated February 12, 2008, pp. 1-2.

[22]  <u>Arita</u>, No. 09-KH-614, at p. 3; State Rec., Vol. II of VII.

[23]  <u>Arita v. Cain</u>, 49 So.3d 885 (La. 2010) (No. 2010-KP-0075); State Rec., Vol. VII of VII.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  "A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  Fisher v. Texas, 169 F.3d 295, 300 (5th Cir.1999).

      In the instant case, the state court noted that some of the claims here were defaulted because they should have been asserted on direct appeal while others were defaulted due to the lack of a contemporaneous objection.  Both of those grounds are obviously independent of the merits of the federal claim.  Therefore, the Court needs only to determine whether those rules are "adequate."

      "The [procedural bar] doctrine presumes that a state procedural ground is adequate ... and, ordinarily, the burden is on the habeas petitioner to demonstrate otherwise."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).  In order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule.  Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997).  Here, petitioner has made no attempt whatsoever to establish that the rules were not strictly or regularly followed.  Moreover, in any event, it is clear that the procedural rules in question constitute independent and adequate state court grounds.  See, e.g., Duncan v. Cain, 278 F.3d 537, 541 (5th Cir. 2002) ("It is well-settled that the contemporaneous-objection rule is an independent and adequate state procedural ground."); Bell v. Cain, Civil Action No. 02-0259, 2002 WL 31002831, at *4 (E.D. La. Aug. 29, 2002) (finding that La.C.Cr.P. art. 930.4(C) is an independent and adequate procedural ground); Gilkers v. Cain, Civil Action No. 05-841, 2006 WL 1985969, at *2 (E.D. La. May 30, 2006) (same).

      "When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice

or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner has demonstrated neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir.1992).

Petitioner here argues that the claims were defaulted due to ineffective assistance of counsel. That argument has no merit for the following reasons.

Petitioner has previously asserted ineffective assistance claims with respect to some of these issues. However, as noted later in this opinion, those allegations of ineffective assistance have no merit, and it is clear that a meritless ineffective assistance of counsel claim cannot serve as cause for a procedural default. Sherill v. Hargett, 184 F.3d 1172, 1176 (10th Cir. 1999); Turner v. Compoy, No. 91-55842, 1993 WL 425372, at *3 n. 2 (9th Cir. Oct. 19, 1993); Bridges v. United States, No. 04 Civ. 2715, 2005 WL 1798084, at *2 (S.D.N.Y. Aug. 1, 2005); Davie v. Mitchell, 324 F.Supp.2d 862, 872 (N.D. Ohio 2004); McLaughlin v. Carroll, 270 F.Supp.2d 490, 516 (D. Del.2003).

As to the remaining issues, petitioner has not previously raised ineffective assistance claims. Therefore, any such ineffective assistance claims are themselves procedurally defaulted, and so petitioner must first show "cause and prejudice" for the default of those claims before they can serve as cause for another defaulted claim. See Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000). Petitioner has not made such a showing in this case.

Accordingly, petitioner has not shown "cause" for any of these defaulted claims. Therefore, the Court need not determine whether "prejudice" resulted, because the question of prejudice is moot. Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996) ("Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice.").

Because petitioner has not met the "cause and prejudice" test, this Court must determine whether the application of the procedural bars would result in a fundamental miscarriage of justice. In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted).

Applying that standard, the Court finds that petitioner has not made a persuasive showing that he

is actually innocent of the charges against him.  The evidence of petitioner's guilt, including his

identification as the robber by multiple eyewitnesses, was overwhelming.  Therefore, he has not

demonstrated that any miscarriage of justice will result from the application of the procedural bars.

Accordingly, this claim is procedurally barred in this federal court.

      Out of an abundance of caution, however, the Court notes that petitioner's claim is

meritless in any event.  The United States Fifth Circuit Court of Appeals has held:

> Even if ... [a] prosecutor's remarks [are] improper,
> prosecutorial remarks are a sufficient ground for habeas relief only
> if they are so prejudicial that they render the trial fundamentally
> unfair.  Such unfairness exists only if the prosecutor's remarks evince
> either persistent and pronounced misconduct or the evidence was so
> insubstantial that (in probability) but for the remarks no conviction
> would have occurred.

Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002) (internal quotation marks, ellipsis, and footnote

omitted); see also Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1989).  In other words, a prosecutor's

remarks warrant *habeas* relief only if they were "a crucial, critical, highly significant factor upon

which the jury based its verdict."  Harris, 313 F.3d at 245.

      As to the references to petitioner as an "armed robber," petitioner opines that the

references were inappropriate because they implied that he had a past conviction for armed robbery.

The Court finds no such implication in the remarks when taken in context.

      Petitioner's argument that the prosecutor wrongly expressed an opinion as to

petitioner's guilt fares no better.  While it is generally improper for a prosecutor to express such an

opinion, relief is not warranted unless there is underlying an implication that the prosecutor's statements are based on additional personal knowledge about the facts of the case that are not in evidence.  See, e.g., United States v. Munoz, 150 F.3d 401, 414-15 (5th Cir. 1998); Richthofen v. Cain, Civ. Action No. 05-5701, 2008 WL 630477, at *49 n.81 (E.D. La. Mar. 7, 2008); Spicer v. Cain, Civ. Action No. 07-3770, 2007 WL 4532221, at *9 (E.D. La. Dec. 19, 2007).  Such comments are not necessarily improper where it is apparent to the jury that the views are based on the evidence presented at trial rather than on personal knowledge of facts outside the record.  See, e.g., Nichols v. Scott, 69 F.3d 1255, 1282-83 (5th Cir. 1995); Richthofen, 2008 WL 630477, at *49 n.81; Spicer, 2007 WL 4532221, at *9.  In the instant case, when the comments in question are viewed in context and in their entirety, it is evident that the prosecutor's statements were not inappropriate but rather were permissible commentary concerning the evidence at trial.

Moreover, even if the prosecutor's comments in either instance were found to be improper, petitioner is not entitled to relief pursuant to the applicable standard.  In light of the overwhelming evidence of petitioner's guilt, the remarks clearly were not a "crucial, critical, highly significant factor" in the jury's verdict.  The comments simply did not render petitioner's trial fundamentally unfair.

Lastly, as to petitioner's claim that the prosecutor elicited testimony from which the jury could wrongly infer that petitioner had been involved in illegal activities in another parish, that claim is likewise meritless.  The claim is based on Detective Jeffery Rodrigue's testimony in which

he made the following comment in passing:  "And I worked in conjunction with New Orleans Police

Department."[24]  At that point, defense counsel made an objection outside of the hearing of the jury:

> MR. WILLIAMS:
> I move for a mistrial in connection with his solicited
> testimony that he worked in conjunction with the New Orleans Police
> Department.  That obviously can mean only one thing, that he – no,
> let me make my objection – that he is involved in criminal activity in
> Orleans Parish.
> There can be no other explanation for this jury, unless –
> unless, somehow or another, she wants to explain it away.
>
> THE COURT:
> Well, the explanation might be that he resides in Orleans
> Parish.
>
> MR. WILLIAMS:
> If that's the explanation, then that's fine.  But I –
>
> THE COURT:
> Let me hear from Ms. Maloney.
>
> MS. MALONY:
> That's exactly the explanation. ...[25]

The judge then denied the motion for a mistrial but asked the prosecutor to "clarify to ensure that

the jury does not have a false impression."[26]  The prosecutor complied by asking whether petitioner

resided in Orleans Parish, and Rodrigue answered in the affirmative.[27]

_____

[24]  State Rec., Vol. IV of VII, transcript of April 24, 2003, p. 92.

[25]  State Rec., Vol. IV of VII, transcript of April 24, 2003, pp. 92-93.

[26]  State Rec., Vol. IV of VII, transcript of April 24, 2003, p. 94.

[27]  State Rec., Vol. IV of VII, transcript of April 24, 2003, p. 94.

There is simply no evidence whatsoever that the prosecutor intentionally elicited the reference to Orleans Parish.  Moreover, in any event, any potential problem arising from the reference was cured by the corrective measures taken to ensure that the jury did not make any unwarranted inferences of other criminal activity.

<u>Confrontation Clause</u>

Petitioner next claims that he was denied the right to confront the technician who lifted fingerprints from the crime scene.  On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

> Defendant argues that the trial court erred in allowing the state to introduce latent fingerprint evidence without producing Sergeant Don Carson, the crime scene technician who purportedly lifted the fingerprint from the door of Meineke Davis' car.  At trial, Detective Gerald Trahan testified that he was one of several officers at the scene of the attempted robbery.  He further testified that Carson was the technician who "processed" the scene.  At that point defense counsel, in a sidebar discussion, objected to the production of any fingerprint evidence collected by Carson.  Counsel argued that any such evidence would be hearsay unless Carson himself testified.  The prosecutor explained to the court that Carson was not there to testify because he had retired from the sheriff's office, and was "driving a mobile home around the United States.  He's in Montana."  The prosecutor argued that the fingerprint evidence was not hearsay, as Trahan was with Carson when the latter collected the evidence and could give a firsthand account of Carson's actions.
> On further questioning by the prosecutor, Trahan testified that he was with Carson as he processed the scene.  Trahan testified that Carson recovered one latent fingerprint from the passenger side of Davis' vehicle.  Trahan included that information in his report.  On cross-examination, Trahan testified that witnesses reported the perpetrator had touched the driver's side and passenger side doors, so Carson dusted both of those doors for fingerprints.  Carson was only able to get a fingerprint from the passenger door.  Trahan saw Carson use dusting powder on the passenger side of the car.  Trahan testified that he did not lift the fingerprint himself, nor did he deliver it to the

sheriff's office.  He said, "That's not my line of work."  Trahan said it was Carson who took possession of the fingerprint and delivered it to the sheriff's office.

Later in the proceedings, defense counsel objected to the state calling an expert in fingerprint analysis and identification.  Counsel argued that Trahan's testimony did not show he was ever the custodian of the latent fingerprint and that the state, therefore, failed to establish its chain of custody.  Counsel argued that no state witness had, to that point, identified the latent fingerprint as the one lifted from Davis' car.  The court ordered a hearing outside the jury's presence to determine the admissibility of the fingerprint evidence.

The state first offered the testimony of Detective Rodrigue, who identified his supplemental police report as the one he prepared in this case.  Rodrigue also identified the Jefferson Parish Sheriff's Office crime report, dated August 27, 2001 and identified an evidence card prepared by a crime scene technician.  Finally, Rodrigue identified the latent fingerprint slide dated August 27, 2001. The detective testified that he did not lift the fingerprint, nor was he present when the print was lifted.

Virgil McKenzie testified that he has worked with the Latent Fingerprint Division of the Jefferson Parish Sheriff's Office since 1995.  He testified that he routinely picks up fingerprint evidence from the Sheriff's Office Crime Scene Division, and transports it to the Latent Fingerprints Division for analysis.  He uses that procedure at least ninety-five per cent of the time, and he followed that procedure in the instant case.

McKenzie identified a photocopy of the crime scene division's evidence book.  He testified that an entry was made by Sergeant Don Carson, a crime scene technician.  McKenzie testified that the photocopy showed the information was entered on August 27, 2001, at 109 hours.  The location was listed as 301 Veterans.  One fingerprint slide was listed, along with Sergeant Carson's name. McKenzie identified his signature on page two of the photocopy, showing that he checked out evidence.

McKenzie testified that, although he has had occasion to recover latent fingerprints at crime scenes, he did not lift the latent print in the instant case.  Fingerprint removal is generally done by trained experts such as himself.  Certain techniques must be used in order to ensure the integrity of the prints.  McKenzie has been qualified in court as an expert witness in the removal and analysis of latent fingerprints.

Lieutenant Patricia Adams of the Latent Fingerprint Division testified that she received the latent fingerprint slide at the Crime Lab sealed in an envelope.  The envelope bore the same case number as the latent print.  Adams testified that she did not lift the print and that she does not know the circumstances under which it was lifted.  She further stated that if Sergeant Carson had used the wrong chemicals or procedures in lifting the fingerprint, the latent print would not be as visible as it is.

Upon completion of the testimony, defense counsel argued that to allow the state's fingerprint evidence to be admitted without the appearance of Sergeant Carson would violate defendant's Sixth Amendment right of confrontation.  Counsel further argued that, in Carson's absence, the state would be unable to prove chain of custody with regard to the fingerprint.  The judge rejected defense counsel's arguments, stating, in part:

> The Court finds that the chain of custody foundation has been laid during this hearing and the Court finds that it would be appropriate evidence to be heard by the jury.
>
> The Court also believes that this Defendant, Mr. Arita, has – and will have an opportunity to confront his accusers as is contemplated by our Constitution.

The jury returned to the courtroom, and the state was allowed to proceed with its case.

The court accepted Lieutenant Adams as an expert in the lifting, analysis, and identification of fingerprints, and the officer testified before the jury.  Adams stated that the most common way of lifting fingerprints is dusting a surface with powder, making latent prints visible.  Tape is then used to lift the print and put it on a backing.  If a surface is wet, a wet re-agent solvent is applied to the surface instead of powder.  The solvent brings up the latent print.  An after wash is then used to get the loose chemicals away from the latent print, and the print is lifted with tape.

Adams testified that she did not lift the fingerprint in this case, but she did make a comparison between the latent print and defendant's fingerprints.  She identified the fingerprint card on which she took defendant's prints.  She also identified the latent print.  She stated that she first saw the latent print when it was brought into her

office.  Upon comparing the latent print with those prints taken from the defendant, Adams concluded they were made by the same person.

Defendant now renews his claims that the state failed to lay the proper foundation for admission of the latent fingerprint and that he was deprived of his right of confrontation because he was not allowed to cross-examine Sergeant Carson.  Before it can be admitted at trial, demonstrative evidence must be properly identified.  LSA–C.E. art. 901.  A sufficient foundation for the admission of evidence is established when the evidence as a whole shows it is more probable than not that the object is one connected with the crime charged.  The identification can be visual, through testimony.  The identification can also be accomplished through chain of custody, by tracing the object from the time it was seized to the time it was offered in evidence.  State v. Cosey, 97–2020, p. 3 (La. 11/28/00), 779 So.2d 675, 678, cert. denied, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001); State v. Brooks, 01–864, p. 9 (La. App. 5 Cir. 1/29/02), 807 So.2d 1090, 1099.

The evidence as to custody need not eliminate all possibilities that an object has been altered.  It is sufficient if the evidence shows it is more likely than not that the object is one connected with the case.  State v. Brooks, supra.  Once a proper foundation has been laid with regard to a piece of evidence, a lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than the admissibility.  Ultimately, a chain of custody is a factual matter for determination by the jury.  State v. Addison, 03–1421, p. 25 (La. App. 5 Cir. 3/30/04), 871 So.2d 536, 551, writ denied, 04–1291 (La. 10/29/04), 885 So.2d 584.

The state was able to establish the whereabouts of the latent fingerprint for almost the entire period between when it was lifted from the car until it was produced in court.  Detective Trahan described in detail how Sergeant Carson lifted the print.  Virgil McKenzie testified that he picked up the fingerprint at the crime scene division, where the division's evidence log showed Carson had deposited it on the morning of the offense.  Patricia Adams testified that she received the fingerprint and examined it.  Carson's absence at trial meant that there was no testimony regarding the transport of the fingerprint from the scene to the crime lab.  Despite that gap, it appears the state proved, by a preponderance of the evidence, that the latent print was connected with the case.

Defendant argues that the latent fingerprint was inadmissible hearsay.  On the contrary, the fingerprint was admissible under the

– 28 –

exception to the hearsay rule codified in LSA–C.E. art. 803.  The article provides, in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> ....
> (8) Public records and reports.  (a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth:
> (i) Its regularly conducted and regularly recorded activities;
> (ii) Matters observed pursuant to duty imposed by law and as to which there was a duty to report;
> ....
> (b) Except as specifically provided otherwise by legislation, the following are excluded from this exception to the hearsay rule:
> (i) Investigative reports by police and other law enforcement personnel.
> (ii) Investigative reports prepared by or for any government, public office, or public agency when offered by that or any other government, public office, or public agency in a case in which it is a party.
> (iii) Factual findings offered by the prosecution in a criminal case.
> (iv) Factual findings resulting from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based or an investigation into a similar occurrence or occurrences.

The Jefferson Parish Sheriff's Office has a duty to seek out and obtain fingerprint evidence as part of its criminal investigations.  Also, latent fingerprints are obtained and recorded as part of the department's regularly conducted and recorded activities.  Thus, the latent fingerprint is covered by LSA–C.E. art. 803(8)(a)(i) and 803(8)(a)(ii).  The print does not fall under any of the four exclusions to the public records exception listed under Article 803(8)(b).

No Louisiana cases directly address the issue of whether a latent fingerprint falls under the public records exception to hearsay. But the Second Circuit found, in <u>State v. Lee</u>, 577 So.2d 1193 (La. App. 2 Cir. 1991), that the defendant's inked fingerprints, taken by police when he was arrested and booked, were admissible under LSA–C.E. arts 803(8)(a)(i) and 803(8)(a)(ii).  The court reasoned that police have a duty, under LSA–R.S. 15:590–592, to collect the fingerprints of persons arrested for felonies, and to submit them to the Louisiana Bureau of Criminal Identification.

The <u>Lee</u> court cited as authority <u>State v. Nicholas</u>, 359 So.2d 965 (La. 1978) and <u>State v. Woodard</u>, 387 So.2d 1066 (La. 1980), cases pre-dating the Louisiana Code of Evidence, in which the Louisiana Supreme Court held that fingerprints on file with a police agency fall under the public documents exception to the hearsay rule. The <u>Lee</u> court also noted that the United States Fifth Circuit, in <u>United States v. Dancy</u>, 861 F.2d 77 (5th Circuit 1988), held that fingerprints on file with a police agency fall under the public documents exception pursuant to Rule 803(8) of the Federal Rules of Evidence.  <u>Lee</u>, 577 So.2d at 1196.

Defendant argues that the instant case is distinguishable from <u>Lee</u> and <u>Woodard</u>, because booking fingerprints are taken by police in the normal course of business, but latent fingerprints are not.  We find that defendant's argument has no merit.  He appears to confuse the public records exception with the hearsay exception for business records, LSA–C.E. art. 803(6).  A latent fingerprint is taken and maintained as part of the public duties of the sheriff's office, as is a booking fingerprint.

Defendant lastly complains that the admission of the latent fingerprint when Sergeant Carson was not available for cross-examination deprived him of his constitutional right of confrontation.   The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront the witnesses against him.  The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. <u>Davis v. Alaska</u>, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); <u>State v. Jackson</u>, 03–883, p. 17 (La. App. 5 Cir. 4/27/04), 880 So.2d 841, 852, <u>writ denied</u>, 04–1399 (La. 11/8/04), 885 So.2d 1118.

Traditionally, for purposes of the Confrontation Clause, all hearsay statements were admissible if (1) the declarant was unavailable to testify, and (2) the statement fell under a "firmly rooted hearsay exception" or bore "particularized guarantees of

trustworthiness." Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). But the United States Supreme Court recently overruled Roberts insofar as it applies to out-of-court statements that are "testimonial" in nature. See, Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 1369–1374, 158 L.Ed.2d 177 (2004). The Crawford Court held that the "adequate indicia of reliability" standard set forth in Roberts is too amorphous to adequately prevent the admission of "core testimonial statements that the Confrontation Clause plainly meant to exclude." Crawford, *supra*. The Court held that testimonial hearsay statements may be admitted as evidence at a criminal trial only when the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declarant. Id.

The Crawford Court drew a distinction between testimonial and non-testimonial hearsay and noted that non-testimonial hearsay is admissible where both prongs of Roberts are satisfied, regardless of whether the defendant has had a prior opportunity to cross-examine the declarant. Id. The Court declined to provide a comprehensive definition of "testimonial," although it did state that, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id.

The evidence at issue here, i.e., the fingerprint, was clearly non-testimonial hearsay evidence. Therefore, the two-prong test of Roberts must be applied to determine its admissibility under the Confrontation Clause. If Sergeant Carson is considered the "declarant," the state was required to show he was unavailable to appear at trial. LSA–C.E. art. 804(A) provides, in part: "Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court."

The Roberts Court held that "The basic litmus of Sixth Amendment unavailability is established: '[A] witness is not "unavailable" for purposes of the ... exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial.'" Roberts, 448 U.S. at 74, 100 S.Ct. at 2543 (quoting Barber v. Page, 390 U.S. 719, 724–725, 88 S.Ct. 1318, 1321–1322, 20 L.Ed.2d 255 (1968) (emphasis added)). See also, State v. Robinson, 423 So.2d 1053, 1058–1059 (La. 1982). Where the issue of unavailability is concerned, this Court has held that "[t]he lengths to which the State must go to try to produce a witness is a question of reasonableness."

State v. Williams, 02–645, p. 13 (La. App. 5 Cir. 11/26/02), 833 So.2d 497, 505, writ denied, 02–3182 (La. 4/25/03), 842 So.2d 398.

In the instant case, the prosecutor informed the trial court that Carson was not there to testify because he had retired from the sheriff's office, and was "driving a mobile home around the United States. He's in Montana." She did not reveal what action, if any, the state had taken to try to have Carson there for trial, nor did the state offer any specifics regarding Carson's whereabouts. During her direct examination of Detective Trahan, the prosecutor asked him whether he knew where Carson was at that time. Trahan responded, "No, ma'am. I know he retired from the Sheriff's Office."

It is arguable that the state failed to show that it made a sufficient effort to locate Carson and procure his presence at trial. If that was the case, then the state failed to satisfy the first prong of the Roberts test for admissibility of hearsay. But even if the trial court erred in admitting the fingerprint evidence, confrontation errors are subject to a Chapman v. California[FN1] harmless error analysis. See, Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); State v. Hawkins, 96–0766, p. 5 (La. 1/14/97), 688 So.2d 473, 478; State v. Royal, 03–439, p. 10 (La. App. 5 Cir. 9/30/03), 857 So.2d 1167, 1173, writ denied, 03–3172 (La. 3/19/04), 869 So.2d 849.

> [FN1]  Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
>
> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Delaware v. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438.

In the instant case, we find that any error in admission of the latent fingerprint was rendered harmless by the overwhelming amount of identification evidence presented by the state. All three of the witnesses to the incident described the perpetrator in detail. There were no significant discrepancies among their descriptions. They all identified defendant in court as the perpetrator, and they all identified defendant in a photographic lineup. We further note that defense counsel cross-examined the state's witnesses extensively and effectively regarding the latent fingerprint and other identification issues.

Based on the foregoing, we find that defendant was not deprived of his right of confrontation by the state's failure to produce Sergeant Carson at trial. Therefore, we find that the trial court did not err by allowing the introduction of the latent fingerprint evidence.[28]

This Court rejects petitioner's assertion that the prosecution's failure to call Carson violated the federal Confrontation Clause. The United States Supreme Court has explained:

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), we held that this provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." A critical portion of this holding ... is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. See id., at 51, 124 S.Ct. 1354. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

---

[28] Arita, 900 So.2d at 41-46; State Rec., Vol. I of VII.

Davis v. Washington, 547 U.S. 813, 821 (2006).  In this case, there were no statements of Carson, testimonial or otherwise, introduced at trial and he was not a witness against petitioner in any sense. Therefore, no Confrontation Clause violation arose from Carson's failure to appear at trial.

Nevertheless, if the United States District Judge finds that there was a Confrontation Clause violation, relief still is not warranted because the error was ultimately harmless.  As the state court noted and as the United States Fifth Circuit Court of Appeals has explained:

> [V]iolations of the Confrontation Clause are still subject to harmless error analysis. ... To determine whether the error was harmless, we consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

Hafdahl v. Johnson, 251 F.3d 528, 539-40 (5th Cir. 2001) (quotation marks omitted).  In the instant case, there was overwhelming evidence of petitioner's guilt.  Specifically, he was identified by multiple eyewitnesses who testified at trial and were subject to cross-examination.  Therefore, the admission of the fingerprint evidence simply did not have "a substantial and injurious effect or influence in determining the jury's verdict."  Taylor v. Cain, 545 F.3d 327, 336 (5th Cir. 2008) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).  Accordingly, any error was harmless and would not warrant federal relief.

The remaining issues relating to this claim are ones of evidence law, and, as such, this Court's review is limited:

> States have traditionally been afforded substantial latitude in fashioning their own rules of evidence and criminal procedure. Therefore, questions relating to the admissibility of evidence are

> matters of State law and generally do not give rise to constitutional
> errors which are subject to redress in Federal habeas corpus
> proceedings.

Taylor v. Maggio, 581 F. Supp. 359, 365-66 (E.D. La.), appeal dismissed, 727 F.2d 341 (5th Cir.

1984); see also Derden v. McNeel, 978 F.2d 1453, 1458 (5th Cir. 1992) ("[E]rrors of state law,

including evidentiary errors, are not cognizable in habeas corpus as such.").  Rather, the United

States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary
> rulings unless those errors result in a "denial of fundamental fairness"
> under the Due Process Clause.   The erroneous admission of
> prejudicial evidence will justify habeas relief only if the admission
> was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little v. Johnson, 162

F.3d 855, 862 (5th Cir. 1998) ("[O]nly when the wrongfully admitted evidence has played a crucial,

critical, and highly significant role in the trial will habeas relief be warranted.").

In this case, however, petitioner has failed to establish even that the evidence was

wrongfully admitted.  For example, it was not necessary for Carson to testify in order for the state

to lay a proper foundation for the fingerprint evidence.  Although Carson collected that evidence,

Trahan witnessed him do so.  Therefore, while the prosecution *could have* called Carson, it was not

*required* to do so.  Rather, the prosecution could, and did, satisfy its burden just as well by calling

Trahan, who could be cross-examined as to the methods used to collect the fingerprint evidence.

Likewise, the defects in the change of custody of the fingerprint evidence did not

render that evidence inadmissible.  The Louisiana Supreme Court has explained:

> In order to introduce demonstrative evidence, it suffices if the
> foundation laid establishes that it is more probable than not that the

– 35 –

> object is the one connected with the case; the lack of positive
> identification or a defect in the chain of custody goes to the weight
> of the evidence rather than to its admissibility.

State v. Sam, 412 So.2d 1082, 1086 (La. 1982).  "The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered."  State v. Hansbro, 796 So.2d 185, 198 (La. App. 2nd Cir. 2001); see also State v. Dunbar, 798 So.2d 178, 181 (La. App. 4th Cir. 2001).  "Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for the jury."  State v. Addison, 871 So.2d 536, 551 (La. App. 5th Cir. 2004).

Therefore, the fingerprint evidence was properly admitted even without Carson's testimony or the establishment of a proper chain of custody.  It was then up to defense counsel to attempt to raise doubt in the minds of the jurors regarding that evidence.  However, ultimately, the decision of what weight, if any, to give to the evidence was up to the jury.  The fact that the jurors obviously believed the witnesses' testimony does not make the admission of the evidence, or petitioner's ultimate conviction, wrongful.

For all of the foregoing reasons, petitioner simply is not entitled to relief based on the failure to call Carson or the admission of the fingerprint evidence.

Ineffective Assistance of Counsel

Petitioner also claims that he received ineffective assistance of counsel.  The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  Petitioner bears the burden of proof on such a claim and "must demonstrate, by a

– 36 –

preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel. In order to prove prejudice with respect to *trial* counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."   Crockett, 796 F.2d at 793.  On the other hand, to prove prejudice with respect to a claim that *appellate* counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274 F.3d at 210.

        Petitioner's ineffective assistance of counsel claims were rejected by the state courts in the post-conviction proceedings.  Because such a claim is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

            The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be

no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.   Under AEDPA, though, it is a necessary premise that the two questions are different.   For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.   A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.   Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).   And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.   The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."   Ibid.   "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."   Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted).   The Supreme Court then explained:

Surmounting Strickland's high bar is never an easy task.   An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.   Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.   Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.   The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by* <u>*Strickland*</u> *and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied* <u>*Strickland*</u>*'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added). For the following reasons, the Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claims.

When petitioner first raised his ineffective assistance claims in the state post-conviction proceedings, the state district court correctly summarized the general law applicable to such claims, noting:

The petitioner, who was represented by James Williams, claims that he received the ineffective assistance of counsel during trial and on appeal. Certainly, he has a Sixth Amendment right to effective legal counsel. Under the well-known standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and <u>State v. Washington</u>, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. <u>State v. Legrand</u>, 2002-1462 (La. 12/3/03), 864 So.2d 89.

To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. It is essential that both prongs of the <u>Strickland</u> test be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.  State v. Soler, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.[29]

The state district court then addressed each of petitioner's ineffective assistance claims.  As to the first claim, the court held:

> [T]he petitioner argues his trial attorney was ineffective by failing to enlist the services of an expert witness to testify regarding the use of fingerprints.  As the state points out in brief, the petitioner submits no proof that the petitioner's fingerprint was incorrectly identified, nor does he suggest any potential fingerprint experts who could have testified.
>
> Moreover, on direct appeal, the fifth circuit reviewed the petitioner's complaint that fingerprint evidence was improperly admitted.  The court of appeal specifically found that any error in admitting the fingerprint evidence was harmless in light of the overwhelming evidence of identification.  In its opinion, the court also noted that defense counsel conducted extensive and effective cross-examination of the state's fingerprint expert.  Arita at 46.
>
> In connection with his claim of ineffective trial counsel, the petitioner fails to meet his burden of proof.  He has not established either prong of the Strickland standard and relief will be denied.[30]

When petitioner then sought review by the Louisiana Fifth Circuit Court of Appeal, that court held

that petitioner's writ application was untimely; however, the Court additionally agreed that the claim

---

[29]  State Rec., Vol. II of VII, Order dated February 12, 2008, pp. 2-3.

[30]  State Rec., Vol. II of VII, Order dated February 12, 2008, p. 3.

had no merit because petitioner failed to make the showing required under <u>Strickland</u>.[31]   The

Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[32]

       The state court decision on this claim was neither contrary to, nor an unreasonable

application of, clearly established federal law.  With respect to claims such as this, the United States

Fifth Circuit Court of Appeals has explained:

> [U]nsupported claims regarding [an] uncalled expert witness are
> speculative and disfavored by this Court as grounds for
> demonstrating ineffective assistance of counsel.

<u>Evans v. Cockrell</u>, 285 F.3d 370, 377 (5th Cir. 2002).  Therefore, the Fifth Circuit has held:

> [T]o prevail on an ineffective assistance claim based on counsel's
> failure to call a witness, the petitioner must name the witness,
> demonstrate that the witness was available to testify and would have
> done so, set out the content of the witness's proposed testimony, and
> show that the testimony would have been favorable to a particular
> defense.

<u>Day v. Quarterman</u>, 566 F.3d 527, 538 (5th Cir. 2009); <u>see also</u> <u>Woodfox v. Cain</u>, 609 F.3d 774, 808

(5th Cir. 2010); <u>Evans</u>, 285 F.3d at 377; <u>Everett v. Louisiana</u>, Civ. Action No. 08-4745, 2009 WL

1971370, at *7 (E.D. La. July 7, 2009).  In the instant case, petitioner has not shown that there is a

fingerprint expert who would have testified in a manner favorable to the defense.  Accordingly,

petitioner has failed to establish either that counsel's performance was deficient or that prejudice

resulted from the failure to call such an expert witness.

       As to petitioner's second ineffective claim, the state district court held:

---

[31]  <u>Arita</u>, No. 09-KH-614, at pp. 3-4; State Rec., Vol. II of VII.

[32]  <u>Arita v. Cain</u>, 49 So.3d 885 (La. 2010) (No. 2010-KP-0075); State Rec., Vol. VII of VII.

The petitioner claims that his attorney on direct appeal was ineffective for failure to raise issues of the court's failure to grant a mistrial, sufficiency of the evidence, and excessive sentence. In reviewing effective assistance of counsel on direct appeal, the Supreme Court of the United States has observed that appellate counsel "need not advance every argument, regardless of merit,["] urged by the defendant. <u>Evits v. Lucey</u>, 469 U.S. 387, 394 (1985). The Court gives great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues.["] <u>Jones v. Barnes</u>, 463 U.S. 745 (1983). This is true even where the weaker arguments have merit. <u>Id</u>. at 751-2.

A review of the appeal in petitioner's case reveals that appellate counsel performed with a high standard of excellence. The evidence against he petitioner was overwhelming and his attorney provided a rigorous defense on his behalf.

The petitioner has failed to meet his heavy burden of establishing ineffective assistance of counsel on appeal. He has proven neither a deficient performance nor prejudice. Without the establishment of ineffective assistance, he cannot blame his failure to raise issues on appellate counsel.[33]

When petitioner then sought review by the Louisiana Fifth Circuit Court of Appeal, that court, as previously noted, held that petitioner's writ application was untimely; however, the Court additionally agreed that the claim had no merit because petitioner failed to make the showing required under <u>Strickland</u>.[34] The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[35]

Again, the state court decision was neither contrary to, nor an unreasonable application of, clearly established federal law. As the state court noted, "[c]ounsel is not obligated

---

[33] State Rec., Vol. II of VII, Order dated February 12, 2008, pp. 3-4.

[34] <u>Arita</u>, No. 09-KH-614, at pp. 3- 4; State Rec., Vol. II of VII.

[35] <u>Arita v. Cain</u>, 49 So.3d 885 (La. 2010) (No. 2010-KP-0075); State Rec., Vol. VII of VII.

to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)."  West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996).  Further, far from evidencing ineffectiveness, an appellant counsel's decision to pare down the number of claims asserted often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions."  Id. at 753.  Therefore, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007) (quotation marks omitted).  That is not the case here, in that none of the three claims suggested by petitioner had merit.

As to the first suggested claim, appellate counsel's decision not to challenge the denial of a mistrial was clearly appropriate.  Petitioner points to two incidents which he argues warranted the granting of a mistrial.  The first incident occurred during opening statements, when the prosecutor referred to petitioner as an "armed robber."   At the conclusion of the opening statement, defense counsel moved for a mistrial outside of the hearing of the jury:

> MR. WILLIAMS:
>
> I have – I didn't want to interrupt Counsel and I think the law allows me when there's an argument and I have a Motion for Mistrial, to make it at the conclusion of the opening statement or the closing argument.
> On two occasions, at the very beginning and at the very end, Ms. Maloney referred to my client as an armed robber.  I move for a mistrial.  He's not charged with armed robbery.  There's no evidence whatsoever in the record that he has any prior armed robbery convictions and I think that was a prejudicial comment, and it's – and he is not charged with armed robbery, and I would move for a mistrial.
>
> MS. MALONEY:

The defendant's on trial for attempted armed robbery and he had a weapon.  He was identified and he couldn't get any property.  I think that makes him an armed robber.  He tried to armed rob these people.

THE COURT:

All right.  The Court denies the Motion for Mistrial.  It has been made clear to this jury that the charge, which was read by the clerk, is attempt armed robbery.   The Court will ensure that throughout this trial, that there is no question as to what the Defendant is charged.

Certainly, during the instructions of law that the Court reads to this jury, it will instruct them on the crime of attempted armed robbery and the verdict form will have as the crime charged, attempted armed robbery, with the lesser included offenses.[36]

The second incident occurred during the testimony of Detective Jeffery Rodrigue.  As previously noted in this opinion, when Rodrigue was questioned concerning what steps he took during his investigation, he mentioned in passing:  "And I worked in conjunction with New Orleans Police Department."[37]  Defense counsel then moved for a mistrial, arguing that the comment was an improper reference to criminal activity in Orleans Parish; however, it was established the comment was instead a reference to the fact that petitioner resided in Orleans Parish.[38]  The judge therefore denied the motion for a mistrial but asked the prosecutor to "clarify to ensure that the jury does not have a false impression."[39]  The prosecutor complied by eliciting testimony from Rodrigue to explain that petitioner resided in Orleans Parish.[40]

---

[36]  State Rec., Vol. III of VII, transcript of April 23, 2003, pp. 19-21.

[37]  State Rec., Vol. IV of VII, transcript of April 24, 2003, p. 92.

[38]  State Rec., Vol. IV of VII, transcript of April 24, 2003, pp. 92-93.

[39]  State Rec., Vol. IV of VII, transcript of April 24, 2003, p. 94.

[40]  State Rec., Vol. IV of VII, transcript of April 24, 2003, p. 94.

Louisiana law sets forth the grounds for a mistrial.  A mistrial is mandatory in following circumstances:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> > (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
> >
> > (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
> >
> > (3) The failure of the defendant to testify in his own defense; or
> >
> > (4) The refusal of the judge to direct a verdict.

La. Code Crim. P. art. 770.

Louisiana law further provides:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> > (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
> >
> > (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

La. Code Crim. P. art. 771.

Obviously, a mistrial was not required under article 770 in that the comments at issue did not concern any of the prohibited grounds listed therein.  Further, it cannot fairly be said that the comments were so prejudicial as to warrant a mistrial under article 771, in that the meaning of the reference to petitioner as an "armed robber" was readily apparent to the jurors from the context and the reference to the New Orleans Police Department was adequately explained so as to dispel any inference adverse to petitioner.

As to the second suggested claim, appellate counsel's decision not to challenge the sufficiency of the evidence was likewise clearly appropriate because such a claim had no reasonable chance of success.  Petitioner was convicted of attempted armed robbery.  Louisiana law provides: "Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."  La.Rev.Stat.Ann. 14:64.  Louisiana law further provides:

> A.  Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
>
> B.  (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.

La.Rev.Stat.Ann. 14:27.

Under both federal and Louisiana law, the testimony of a single eyewitness is generally sufficient to support a conviction.  See United States v. King, 703 F.2d 119, 125 (5th Cir. 1983); State v. Neal, 796 So.2d 649, 658 (La. 2001).  In the instant case, however, there were in fact multiple eyewitnesses.  Meineke Davis, Candie Robertson, and Benjamin Harrison all positively identified petitioner at trial and testified that he threatened them with a gun in an attempt to rob the restaurant.  That testimony alone was sufficient to support petitioner's conviction, and, therefore, appellate counsel wisely chose to forego a sufficiency of the evidence claim on appeal.[41]

As to the third suggested claim, appellate counsel's decision not to challenge the sentence as excessive was also appropriate because the sentence clearly fell within constitutional parameters.  In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed."  "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts."  United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)).  "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes."  Gonzales, 121 F.3d at 942 (quotation marks omitted).

---

[41] Petitioner attempts to avoid this result by arguing that there were inconsistencies in the witnesses' testimony.  However, resolution of such discrepancies or inconsistencies in testimony is the province of the jury.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979).

"[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id. (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992). Moreover, when, as here, evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses." Id.

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." Gonzales, 121 F.3d at 943. In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line,

> thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

In light of the Rummel finding that a *life* sentence was not excessive when imposed for a *nonviolent* offense where the habitual offender had two prior *nonviolent* offenses, all of which were relatively minor offenses, it is abundantly clear that petitioner's enhanced thirty-year sentence as a second offender for the grave crime of attempted armed robbery, a sentence far below the maximum sentence, was not grossly disproportionate. Therefore, there was no violation of the Eighth Amendment to the United States Constitution.

Moreover, to the extent that petitioner is contending that his sentence was excessive under the Louisiana Constitution, he has pointed to no authority which clearly supports that contention, and this Court has found none. Further, as noted, the state courts found no merit to this aspect of petitioner's claim, and they are obviously in a better position to interpret state law and to assess the excessiveness of sentences under the state constitution.

For all of the foregoing reasons, it is apparent that appellate counsel was not ineffective for failing to challenge the denial of a mistrial, the sufficiency of the evidence, or the constitutionality of the sentence. Therefore, under the doubly deferential standards applicable here, this Court cannot say that the state court's decision denying petitioner claim was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the claim must be rejected.

The Court notes that petitioner also argues that his state post-conviction counsel was ineffective for failing ensure that state post-conviction relief was sought with alacrity so as to protect

petitioner's ability to seek federal *habeas corpus* relief before the applicable deadline.  That claim warrants little attention because it alleges ineffective assistance of counsel in the post-conviction proceedings.  However, as the United States Supreme Court has explained:  "There is no constitutional right to an attorney in state post-conviction proceedings.  Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991).

Denial of Motion to Strike

Lastly, petitioner claims that the trial court erred by denying a defense motion to strike prospective juror Eula Charles for cause.  The state argues that this claim is procedurally barred; however, because the claim is plainly meritless this Court simply recommends that it be dismissed on that basis.[42]  Regardless of whether Charles should have been excused for cause, which is an issue this Court need not and does not reach, petitioner's claim clearly fails for an entirely different reason.  Where a challenged juror is removed by use of a peremptory challenge after the denial of a challenge for cause, a petitioner is entitled to federal *habeas corpus* relief only if he demonstrates that the jury ultimately selected to try the case was not impartial.  <u>Ross v. Oklahoma</u>, 487 U.S. 81, 85-86 (1988).  Because defense counsel used a peremptory challenge to strike Charles and because petitioner has failed to demonstrate that the jury ultimately selected was not impartial, his claim necessarily fails.  <u>Dorsey v. Quarterman</u>, 494 F.3d 527, 533 (5th Cir. 2007); <u>Lagrone v.</u>

---

[42]  A federal court need not decide whether a claim is procedurally  barred if the claim clearly fails on the merits.  <u>Glover v. Hargett</u>, 56 F.3d 682, 684 (5th Cir. 1995); <u>Wiley v. Puckett</u>, 969 F.2d 86, 104 (5th Cir. 1992); <u>Corzo v. Murphy</u>, Civ. Action No. 07–7409, 2008 WL 3347394, at * 1 n. 5 (E.D. La. July 30, 2008); <u>Lee v. Cain</u>, Civ. Action No. 06–9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).

Cockrell, No. 02-10976, 2003 WL 22327519, at *12 (5th Cir. Sept. 2, 2003); Wilson v. Cain, Civ.

Action No. 06-890, 2009 WL 2163124, at *12 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir.

2011).

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus*

relief filed by Theodore N. Arita be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within fourteen (14) days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415,

1430 (5th Cir. 1996) (en banc).[43]

New Orleans, Louisiana, this twenty-fourth day of August, 2011.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[43] Douglass referenced the previously applicable ten-day period for the filing of objections.
Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen
days.